# B. Nulton, Plff. in Err., *v.* W. R. Baum and A. M. Baum, His Wife, to the Use of the Wife.

A copy of a book of original entry duly verified and filed with the plaintiff's statement may be made, by rule of court, prima facie evidence of the plaintiff's claim.

In an action by the assignee of a book account it is competent to prove the assignment.

A book of account otherwise competent is not rendered inadmissible as a book of original entry by the mere fact that it contains entries copied from a temporary order book.

(Argued October 10, 1887. Decided October 31, 1887.)

October Term, 1887, No. 3, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Error to the Common Pleas of Armstrong County to review a judgment on a verdict for the plaintiffs in an action of assumpsit. Affirmed.

This was an action of assumpsit begun January 22, 1884, by

W. R. Baum and A. M. Baum, his wife, for the use of the wife, against B. Nulton, upon a book account for goods sold and delivered by W. R. Baum to Nulton, amounting October 28, 1882, to $905.63; this account was, on June 1, 1883, assigned to Mrs. Baum; and upon another book account for goods sold and delivered by Mrs. Baum to Nulton, amounting September 6, 1883, to $68.49—with interest on both amounts from their respective dates.    Against this claim the plaintiffs admitted a credit for goods bought November 28, 1883, at the sale of their store, $209.83, with interest from that date.

Rule 40 of the common pleas of Armstrong county contained the following provisions:

"Sec. 5.    When the action is brought in whole or in part on book account, the plaintiff shall not be permitted to give evidence of his book accounts, unless he shall file with his declaration a copy of his book entries, together with a statement of all credits to which he knows the defendant is entitled (whether such credits appear on the plaintiff's books or not), verified by an affidavit setting forth: (1) That the copy of the account filed is correctly taken from the plaintiff's book or books of original entry; (2) that such charges were made at or about the times of their respective dates; (3) that the goods were sold and delivered, or the work done, at or about the time the charges were made; (4) that the charges are correct and the account just; (5) that the defendant is not entitled to any other or greater credits than those stated on the copy of the account filed.

"Sec. 6.    Such copy and statement of credits so verified being filed, the account shall be deemed admitted by the defendant, and on the trial shall be read to the jury without further proof, unless the defendant, either before or at the time of putting in his plea, shall file an affidavit stating that the account is wrong and unjust, specifying in what particulars, and how and in what respect it is wrong and unjust; and the plaintiff shall then be required to prove his account correct only as to the parts alleged to be wrong in the defendant's affidavit.

"Sec. 7.    If the defendant, in addition to the affidavit described in the preceding rule, shall further swear that he verily believes injustice will be done to him unless the plaintiff be compelled to produce his books, and subject himself to a cross-examination, or to be held to strict proof of his claim, then the correctness of the account, so far as it has been specifically denied

by the defendant's affidavit, shall be proved as if these rules had not been made."

The plaintiffs filed a statement of their claim and copies of book entries and verified the same by affidavit of W. R. Baum in accordance with this rule.

Before pleading the defendant filed an affidavit of defense in which he alleged "that he has a full legal and equitable defense to the whole of the plaintiffs' claim in this case, to wit: First, he never had any dealings with A. M. Baum, the wife of W. R. Baum, and never authorized any person to buy any goods from W. R. Baum, as her agent, and never bought any goods from her to his knowledge, and the accounts as stated are all wrong, and there is due the defendant $600 for store, groceries, fixtures, and the contents of the store he bought, sold by the sheriff, from W. R. Baum, in November, 1882, and which the defendant sold W. R. Baum; also said Baum owes defendant note dated March 18, 1874, with interest $34.80; also $20 for professional service in case of Baum v. Ekins; also $10 for professional service in case of Baum v. Jess Cunningham; also $10 for professional services in case of Baum v. J. A. Lowry; also a number of checks for money in Kittanning banks; also $20.70, attorney fee and attorney commission, in cases Jos. Steim v. W. R. Baum, at Nos. 76 and 77, March Term, 1874; also $10 for professional services, case W. R. Baum v. Jas. Stewart *et al.;* also $10 for professional services, case W. R. Baum v. Albert Aye and Boerline; also $10 for professional advice and affidavit, case G. B. Dougherty v. W. R. Baum; also $21.86 account of Day & Frick, Philadelphia, assigned to B. Nulton against W. R. Baum; also $350, that credits were allowed in settlement of judgment of J. W. Titley for and against W. R. Baum, No. 443, March Term, 1878, which defendant is entitled to,—all of which is justly due him, which he will prove on the trial of this case by competent witnesses."

The defendant afterward pleaded *non assumpsit,* payment, payment with leave, etc., set-off and *non assumpsit, infra sex annos;* and further made his affidavit of defense a special plea.

After an award of arbitrators in favor of the plaintiff and an appeal therefrom the case was tried before NEALE, P. J.

The plaintiffs offered in evidence their claim as filed, with W. R. Baum's affidavit. Objection overruled and accounts ad-

mitted, but production of books required under defendant's affidavit. First assignment of error.

The plaintiffs also offered in evidence the assignment of W. R. Baum's book account. Objection overruled. Second assignment of error.

The plaintiffs also offered in evidence a sales book in which several entries were transferred from the order book. Objection overruled. Third assignment of error.

Under objection the court admitted in evidence a store book of Mrs. Baum's, testimony to disprove a credit claimed by Nulton, evidence that certain goods were obtained by E. Nulton on orders signed by B. Nulton, and that this action was afterward ratified by B. Nulton, and evidence that goods were also obtained on similar orders by David Schreckongost—and these were the subjects respectively of the fourth, fifth, sixth, seventh, and eighth assignments of error.

At the conclusion of the testimony the court overruled the defendant's motion to strike out all the testimony concerning the purchase of goods from Mrs. Baum. Ninth assignment of error.

The court charged, *inter alia,* as follows:

If the book account stood alone and was unimpeached in all respects, and no credits upon it, no credits to be allowed upon it, then it would be your duty to find a verdict conformable to the amount of that book account. [You take the account, then, as a starting point, and you will determine under the evidence how much may be correctly owing on that account from Mr. Nulton to the plaintiff. From that you will deduct only legitimate and legal credits due to Mr. Nulton, and if you should find that Mr. Nulton's credits exceed the amount of the legal charges against him, he would be entitled to a verdict at your hands, for that amount, for that balance. If, on the other hand, you find that his legitimate, legal, and honest credits do not exceed or do not reach the amount thus legally due from him to the plaintiff, a verdict for such balance as you find is due to them.]

We will very briefly recapitulate some of the claims made by Mr. Nulton. In the first place he claims he is entitled to an offset of $600 or credit on that account for the value of goods taken by the plaintiff from him, and sold by him to the plaintiff. You will take all the evidence as to that transaction. We may say to you here that Mr. Nulton merely asserted, himself, that

he was buying for Mrs. Baum; if that were not the fact, and if he were not her agent by her or someone for her, but merely set himself up in that relation, it would not constitute a trust relation between them, because she could not be bound by it at all. She could not be bound by a voluntary assumption of any person to do or not to do any particular thing on her account. There must be an authorization before an agency can be established, and before that relation of trust will arise. [The goods, it seems, by Mr. Nulton's evidence were bought for between $200 and $300. If there was nothing beyond that and they were just simply transferred to Mr. Baum, that might probably be regarded by the jury as a criterion or standard from which to judge the value of these goods.]

Mr. Nulton had a right to demand his price for these goods, and it was in the power of the plaintiffs to accept or refuse them at the price named. It will be for the jury to say whether there was any price fixed or established between them; whether Mr. Nulton did demand from Mr. Baum such a sum or such a price for his goods. He must do it at or about the time the goods are delivered; because if he simply hands them over to Mr. Baum without stating what price he will take for them, and Mr. Baum takes them off his hands without reference to any stipulated price, then there is no contract as to price established between them, and if Mr. Baum had taken possession of them and had them in his hands for a long time, and Mr. Nulton then comes and assesses $600 as the price, that will not establish their actual value at all. You will go further and ascertain what their actual value was; Mr. Baum would be bound to pay for them according to their actual value. You have in that respect conflicting testimony between the parties, which is entirely for the jury.

[Mr. Baum stated what he estimated them to be worth outside of the sale—that there was not over $1,000 worth of goods in the store at the time, and possibly not this much. You will make your estimate from what was really in the store, whatever you find that to be, the amount that was there originally or not, and you will ascertain what was bought before of that stock, and by other persons. It does not appear that Mr. Nulton bought the whole stock. If you find that they had no price agreed upon between themselves, then whatever would be the

fair value of these goods would be the amount that you would
allow Mr. Nulton as a credit upon this account.]

Mr. Nulton has also made certain charges against Mr. Baum
for services rendered.   He has a right to be paid for his serv-
ices, and I may state to you that the price is not regulated by the
actual success of the party in making collections.   Many times
an attorney who has been employed may fail to collect, and the
failure may not be his fault at all, and it would be unfair that
the services of an attorney should be obtained without compen-
sation to him, and the compensation is not entirely dependent
upon the successful result of his effects; he may have just as
much labor in an unsuccessful effort to collect a claim as he
would have in a successful one.   Of course it is always more
satisfactory to an attorney to make his charges after he has been
successful than when he has not been successful, and it is more
comfortable and pleasanter to clients to pay when his services
have been successful.   Whatever you find a fair and honest
value of the services to be, you will allow them as credits upon
this claim.   We do not think this offset on that claim, which
was an assignment to Mr. Nulton, should come in here.   He is
not an assignee for value on that claim because he has not paid
for it; according to his testimony he is not to pay for it till he
collects it; and stated in that manner it would not be a valid
claim as an offset here.

[We may make some explanations as to attorney's commis-
sion which he claims for a certain judgment he entered in favor
of Mr. Steim against Mr. Baum.   He has, doubtless, a right to
this commission but his right must be established there to legally
charge the plaintiff.   The one who owns the notes that were
entered, upon which this allowance of attorney's commission
was inserted in the judgments, so far as concerns these attorney's
commissions, is bound yet, and they may be the subject of fur-
ther action.   The plaintiff would have the right to-day to come
in and receipt for those attorney's commissions, and that would
entirely acquit Mr. Baum of any liability for their payment to
Mr. Nulton, and Mr. Nulton, the defendant here, would have
his recourse upon the plaintiff in these judgments, and would
have the right to claim these attorney's commissions and recover
them from the plaintiff in that judgment.   It is different, how-
ever, as to an attorney's fee; there is an attorney's fee of $3 in
each case; he would be entitled to these $3 in each case.]

Then, in regard to the other claim for $300 which he advanced to Mr. Baum (interest on some $3,000), he is entitled to be repaid that amount. You have some conflict of testimony upon that part. It will be for you to reconcile that testimony to determine whether or not Mr. Nulton is entitled to that credit of $300, and interest upon it. You will allow Mr. Nulton for whatever credits he is entitled to, and interest; and so with the plaintiff on his claim; so that both parties on their respective claims would be entitled to interest. [You have a claim set up by Mr. Nulton that he says is due on the judgment that was entered by Mr. Titley against Mr. Baum. He claims that that $300 and the balance of that judgment would amount to something like $555; and that amount he claims,—that is, including the $300 check. Now, unless there was an express agreement between Mr. Nulton and Mr. Baum, that Baum would pay him the balance, Mr. Nulton, the defendant, has discharged Mr. Baum of liability for its payment by entering a receipt upon the record and satisfying the judgment.] He could not recover upon that judgment until he should come into court and show that he had committed an error in satisfying that judgment, unless, as I have stated, the satisfaction was entered at the request of Mr. Baum and for Mr. Baum's benefit, and upon the expectation of Mr. Baum paying him that balance at some other time. When one voluntarily releases a claim that he has against an individual, he cannot resume that right again at his own pleasure. When one voluntarily discharges a party from liability, he cannot, at his own option, revive that liability, so with respect to that, we have given you this instruction.

The portions of the charge inclosed in brackets were the subject of the tenth assignment of error.

Verdict and judgment were for the plaintiffs for $503.42.

*M. F. Leason* and *David Barclay* for plaintiff in error.

*Calvin Rayburn* and *W. D. Patton* for defendants in error.

PER CURIAM:

After an examination of this case as it appears in the paper books which we have before us, we are satisfied that an extended discussion of the several assignments of error would subserve no good purpose; we therefore dismiss them without comment, and concur in the judgment of the court below.

The judgment is affirmed.